PORTLAND RY., LIGHT & POWER CO. v. CITY OF PORTLAND et. al.

(District Court, D. Oregon. January 12, 1914.)

No. 6,222.

1. COURTS (§ 282*)—FEDERAL COURTS—JURISDICTION—FEDERAL QUESTIONS.
Where a complaint sought to restrain the enforcement of a city ordinance compelling street railway companies to sell six tickets for 25 cents and alleged that complainant had a franchise authorizing it to charge a five-cent fare; that the ordinance, if enforced, would violate the contract clause of the federal Constitution and would also deprive complainant of its property without due process of law; that the rates prescribed by the ordinance were confiscatory; and that the penalties prescribed by the ordinance were so excessive as to prevent persons affected thereby from resorting to the courts to determine the validity of the ordinance, and thereby deprived complainant of the equal protection of the laws—each of such allegations presented a federal question and was sufficient to confer federal jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–824; Dec. Dig. § 282.*]

2. COURTS (§ 299*)—FEDERAL COURTS—JURISDICTION.
When federal jurisdiction is invoked on the ground that federal questions are involved, jurisdiction depends on the questions presented by the pleadings and not on the ultimate determination thereof.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 841; Dec. Dig. § 299.*]

3. COURTS (§ 263*)—FEDERAL COURTS—JURISDICTION—RETENTION.
Where federal jurisdiction has been properly invoked in a suit involving a federal question, the court will retain the case and administer complete relief on other grounds, though the state courts may afford an adequate remedy.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 799, 800; Dec. Dig. § 263.*]

4. COURTS (§ 489*)—FEDERAL COURTS—FEDERAL QUESTIONS.
Where a city, in the exercise of certain enumerated state powers delegated to it, transgresses the federal Constitution, the federal courts have jurisdiction to right the wrong, though the act may not have been authorized by the state, or may have been forbidden by the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*]

5. CONSTITUTIONAL LAW (§ 135*)—CORPORATE FRANCHISE—CONTRACT—REGULATION.
A street railway franchise, providing that the grantee may charge a fare not exceeding five cents per passenger, does not constitute a contract suspending the governmental power of regulation during the life of the franchise.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 380–387; Dec. Dig. § 135.*]

6. CONSTITUTIONAL LAW (§ 247*)—ORDINANCES—STREET RAILWAY RATES—REGULATION—PENALTIES.
Where a city ordinance requiring street railway companies to sell six tickets for 25 cents provided a penalty of a ·fine of $100 · or 30 days in jail, or both fine and imprisonment, such penalty was not so excessive or unreasonable as to prevent persons affected thereby from resorting to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the courts to determine the validity of the ordinance and for that reason operate to deny equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 703; Dec. Dig. § 247.*]

7. CARRIERS (§ 1*)—STREET RAILROADS—RATES—REGULATION—PUBLIC UTILITY LAW—EFFECT—CITY ORDINANCES.

Since the right to regulate rates of public service corporations is a governmental power vested in the state in its sovereign capacity, the state of Oregon having passed a public utility law (Laws Or. 1911, c. 279) vesting in the State Railroad Commission jurisdiction to supervise and regulate every public utility in the state, giving to such commission exclusive authority to investigate rates charged by public utilities and, if found unreasonable, to fix and order substituted therefor such rates as shall be just and reasonable, and providing that every public utility shall file with the commission schedules of its rates and that no changes shall be made therein except as in the law provided, such act deprived the city of Portland of power to pass an ordinance requiring a street railway company in such city which had filed its rates with the Railroad Commission to sell six tickets for 25 cents after the ordinance took effect.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 2; Dec. Dig. § 1.*]

In Equity. Suit by the Portland Railway, Light & Power Company against the City of Portland to enjoin the enforcement of a city ordinance requiring street railway companies in the city to sell six tickets for 25 cents. On motion to dismiss. Denied. Preliminary injunction granted.

F. V. Holman and Harrison Allen, both of Portland, Or., for plaintiff.

L. E. Latourette, Asst. City Atty., of Portland, Or., for defendants.

BEAN, District Judge. The court has not been able to formulate a written opinion owing to the fact that the last brief in the case was not filed until Friday afternoon. However, I have reached a conclusion in the matter, and in order that there may be no unnecessary delay I feel that I should announce it this morning.

The suit is brought to enjoin the enforcement of an ordinance of the city, adopted November 5, 1913, requiring street railway companies within the city engaged in the transportation of passengers to sell six tickets for 25 cents, and to provide conductors with such tickets for sale whenever demanded by a passenger, upon payment of the price specified. Upon the filing of the bill an order was made requiring the defendant to appear and show cause why a preliminary injunction should not issue. In obedience to this order the defendant appeared and filed a motion to dismiss the complaint on the ground that the court was without jurisdiction and because it does not state facts sufficient to constitute a cause of suit.

[1] Now, the jurisdiction of this court is invoked on several grounds. First, it is alleged that the franchise under which the plaintiff is operating contains a provision that it may charge a fare of five cents, and no more, for each passenger carried, and that such provision constitutes a contract valid during the life of the franchise which cannot be im-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

paired, and therefore the ordinance which undertakes to reduce the fare below five cents is violative of the provisions of section 10 of article 1 of the Constitution of the United States, which inhibits a state from passing any law impairing the obligations of contracts. This clearly gives the federal court jurisdiction, and it is immaterial that it may ultimately hold that no such contract exists.

[2] The jurisdiction depends on the questions involved and not the ultimate decision thereof, and the court will not lose jurisdiction because it may decide that question against the complainant.

[3] The jurisdiction of the court having been properly invoked, it will retain the case and administer relief on other grounds, although the state courts may afford an adequate remedy. It was so held in the Michigan Railroad Tax cases (C. C.) 138 Fed. 223.

Again, it is claimed that the ordinance in question if enforced will deprive the plaintiff of its property without due process of law, and therefore violates the fourteenth amendment to the federal Constitution because the city has no authority to pass such an ordinance, since the amendment to the charter, under which it was enacted, is in conflict with the Utility Laws of the state and therefore void. This also presents a federal question under the recent case of Home Tel. & Tel. Co. v. Los Angeles, 227 U. S. 278, 33 Sup. Ct. 312, 57 L. Ed. 510, and gives this court jurisdiction. In that case it is said that:

"The fourteenth amendment provides * * * for a case where one who is in possession of state power uses that power to the doing of the wrongs which the amendment forbids even although the consummation of the wrong may not be within the powers possessed if the commission of the wrong itself is rendered possible or is efficiently aided by the state authority lodged in the wrongdoer. That is to say, the theory of the amendment is that, where an officer or other representative of a state in the exercise of the authority with which he is clothed misuses the power possessed to do a wrong forbidden by the amendment, inquiry concerning whether the state has authorized the wrong is irrelevant, and the federal judicial power is competent to afford redress for the wrong by dealing with the officer and the result of his exertion of power."

[4] Now, the city of Portland possesses certain enumerated state powers, and if in the exercise of such powers it transgresses the Constitution of the United States the federal court has jurisdiction to right the wrong, although the act may not have been authorized by the state or indeed may have been forbidden by the state, as was the fact in the Home Telephone Case.

Again, it is claimed that the rates fixed by the ordinance are confiscatory and will deny the company a reasonable return on its investment and therefore deprive it of its property without due process of law. This presents a federal question, and, if the averments of the bill are sufficient to state a cause of action, plaintiff is entitled to be heard upon this point.

And, finally, it is claimed that the penalties provided in the ordinance are so excessive as to prevent persons affected thereby from resorting to the courts for the purpose of determining the validity of the ordinance, and they are therefore denied the equal protection of the

laws and their property liable to be taken without due process of law. If true, this also presents a federal question within the ruling of the Supreme Court of the United States in Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764. I think, therefore, clearly the court has jurisdiction.

As already said, no answer has been filed, but the case has been submitted on a motion to dismiss, which serves the purpose of a demurrer. The allegations of the complaint must therefore be taken as true, and if it states facts sufficient to constitute a cause of suit the plaintiff is entitled to the preliminary injunction prayed for.

[5] This court held, in Portland Ry., Light & Power Co. v. City of Portland, 201 Fed. 119, that the provision in the franchise of the plaintiff concerning the rates to be charged by it does not constitute a contract suspending the governmental power of regulation during the life of the franchise, and I take it, therefore, plaintiff is not entitled to relief on this ground.

I doubt whether the complaint as amended states facts sufficient to show that the rates as fixed by the city will be confiscatory. The value of plaintiff's property devoted to street railway purposes within the city is stated in the complaint, but it is silent as to the income derived therefrom or the operating expenses. The only averment in that connection is that from the present revenues the plaintiff is earning only a certain per cent. on its investment. This is but a conclusion, and under the recent decisions of the Supreme Court in the Minnesota and kindred rate cases is not sufficient. The omission in the complaint is probably due to an error of some amanuensis in copying the amendment. In the original bill it was alleged that the total revenues of the company for the year ending June 30, 1913, were $3,577,627.94, and the total expenses, including taxes, fixed charges, etc., for the same period, were $2,878,263.56, leaving a net revenue of $499,364.38, being an income of about 4 per cent. on the $12,284,487, the alleged present value of the railway plant within the city. But these averments are omitted from the amended bill, no doubt by an oversight in drafting the amendment. Nor do the affidavits filed give any data upon which the court could proceed in this connection. An affidavit filed on behalf of the city shows that from the reports of the company filed with the city auditor the revenues for the year preceding the filing of the bill were $4,012,706.78, and the expenses $2,183,698.34, leaving a net revenue of $1,829,008.44. But upon attention being called to alleged errors in this statement, a supplemental affidavit was filed, in which the operating expenses are undertaken to be stated in detail, and as so stated show that the total was $4,214,434.09, or in all $200,000 more than the income. It is apparent therefore that there must be some error in these affidavits. The operating expenses, as stated in the last affidavit, probably include those of the entire system.

[6] I do not think the penalties provided in the ordinance for a violation thereof are so excessive or unreasonable as to come within the rule laid down in the Young Case. The law under consideration in that case fixed two cents a mile as the passenger rates to be charged by

railroads in Minnesota, and made a violation thereof by any person, agent, or employé of the company a felony punishable by a fine not exceeding $5,000 or by imprisonment in the state penitentiary for a period not exceeding five years, or both fine and imprisonment, and the court held that the fine was so enormous and the penalty imposed so serious as to amount to an intimidation of the company and its employés from resorting to the courts to test the validity of the law, and therefore violated the federal Constitution. But here the penalty does not exceed a fine of $100 or 30 days in the city jail, or both fine and imprisonment, and is, I take it, such a penalty as might lawfully be provided to compel obedience to the ordinance.

[7] The remaining question, and the vital one, as I take it, is whether section 81 of the city charter so far as it undertakes to vest the municipality with power to fix rates to be charged by public utility companies operating within the city is valid. It was adopted by the legal voters of the city in May, 1913, as one of several amendments to the city charter. At that time a general law of the state was in force known as the Public Utility Act (Laws 1911, c. 279), which vested the Railroad Commission with the power and jurisdiction to supervise and regulate every public utility in the state, and gave to such commission the exclusive authority to investigate any rates charged by public utilities and if found unreasonable to fix and order substituted therefor such rates as shall be just and reasonable. The law provides that every public utility in the state must file with the commission within a time fixed by it schedules of its rates, and that no changes shall be made therein except as in the law provided. It is also made an offense, punishable as such, for any public utility to charge or collect a greater or less compensation than specified in such schedule until the same is changed as provided by law, or to accept or receive any rebate, commission, or discrimination whereby any service shall be rendered at a less rate than named in the published schedule and tariff in force as provided in the act. The purpose of these provisions was to prevent unjust discrimination and to require public utilities to afford the same service to all patrons under the same circumstances. The plaintiff, in compliance with this law, filed its schedule of rates with the commission prior to the adoption of the amendment to the city charter and prior to the enactment of the ordinance in question. The rates stated in these schedules are materially different from those prescribed by the city. It is apparent, therefore, that both the Utility Act and the city ordinance cannot be enforced. If the plaintiff obeys the Utility Act and charges the rates made lawful thereby, it will be violating the city ordinance and be liable to punishment therefor, for the charges provided in the ordinance are less than those fixed in the schedule filed with the Public Utility Commission. If, on the other hand, it obeys the city ordinance and charges the rate provided therein, it will be violating the Utility Act for a like reason. It is clear therefore that both cannot stand. One or the other must give way. There cannot be two public bodies existing at the same time with original jurisdiction to prescribe and fix the only lawful rates to be charged by a public utility. Cali-

fornia-Oregon Power Co. v. City of Grants Pass (D. C.) 203 Fed. 173; and Seattle Electric Co. v. City of Seattle (D. C.) 206 Fed. 955.

Now, the right to regulate rates of public service corporations is a governmental power vested in the state in its sovereign capacity. It may be exercised by the state directly or through a commission appointed by it, or it may delegate such power to a municipality. But I do not understand that a municipality may assume to itself such power without the consent of the state where there is a general law on the subject emanating from the entire state. It is true that under the Oregon system the legal voters of every city or town are given power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the state. But this does not authorize the people of a city to amend its charter so as to confer upon the municipality powers beyond what are purely municipal or inconsistent with a general law of the state constitutionally enacted. Straw v. Harris, 54 Or. 424, 103 Pac. 777, and Kiernan v. Portland, 57 Or. 454, 111 Pac. 379, 112 Pac. 402, 37 L. R. A. (N. S.) 339. It was so held by the Supreme Court of the state in Riggs v. City of Grants Pass, 134 Pac. 776, where a city attempted to amend its charter so as to authorize its council to incur an indebtedness for the building of railroads. The regulation of fares to be charged by public service corporations is not primarily a municipal matter, but is a sovereign right belonging to the state in its sovereign capacity. All authority over the subject must emanate from the state. The effect of the amendment to the charter of the city of Portland is an attempt to ignore the state authority and to assume sovereign rights superior and contrary to the expressed will of the state as manifested in its legislation. If the amendment is valid and takes the public utilities within the city of Portland out of the operation of the Public Utility Act and the jurisdiction of the commission created by it, then every municipality in the state may amend its charter with like effect, and the Public Utility Act will become a useless and emasculated piece of legislation, the will of the entire people as expressed therein be practically ignored, and the people of a part of the state become greater than the whole. The Public Utility Act was not only passed by the Legislature but approved by a majority of the people on a referendum vote. It is therefore the expressed will of the sovereign power of the state concerning a subject over which it has jurisdiction, and it cannot be amended or abrogated by the people of a particular or given locality. The purpose was to provide a uniform system throughout the entire state for the control and regulation of public utilities and fixing the rates to be charged by them, and to create a tribunal for that purpose. It is true the Public Utility Act does recognize the authority of municipalities over public service corporations within its boundaries for certain purposes, but not in the matter of regulating or prescribing rates or fares. That power is vested alone in the Public Service Commission.

Now, Portland, or the people of Portland, are not without remedy if the rate charged by the plaintiff is unreasonable or unjust. They have a full and complete remedy by application to the tribunal created

by the state for the purpose of determining such questions, and which is provided with the necessary machinery and expert assistants to deal with the subject intelligently. I take it therefore that the preliminary injunction should issue; the form thereof and the amount of the bond to be determined hereafter.