# City Council of Montgomery *v.* Capital City Water Company.

*Application for Mandamus, by City against Water Company.*

1. *Contract of municipal corporation in limitation or derogation of governmental or police powers.*—A contract in the form of an ordinance, by which the municipal authorities of a city undertake to grant to a private corporation or person powers and privileges in limitation or derogation of their governmental or police powers over the streets, is against public policy, and is not binding on their successors in office; nor can they delegate to a civil engineer power to locate water pipes in the street, so as to limit the power of their successors to remove or change them.

2. *Contract between city and water company construed, as to location or change of water-pipes across sewers in streets.*—Under the contract for the construction of a system of water works in the city of Montgomery, between the city and A. H. Howland and his associates, to whose rights and duties the Capital City Water Company has now succeeded, the right to determine the location of the pipes, mains and aqueducts was reserved to the city, and it was provided that they "should be laid with covering not less than two feet below the established grade of the streets, whether such is the present surface grade or not;" that if the established grade of any street. in which pipes have been laid, "shall be afterwards changed by authority and direction of the city, the city shall pay the expense of changing the grades of such pipes;" and that the city "may employ a practical hydraulic engineer to see that said works are so constructed as to properly protect the interests.

of the city." *Held*, that this contract did not take away the right of the city to require the company to lower some of its pipes, which passed through and obstructed sewers in the streets, although they were laid under the superintendence of the city's engineer; and, the grade of the street not having been changed, that the question of the city's liability for the expense of lowering the pipes could not be raised in an application for *mandamus* to require the company to lower them.

APPEAL from the City Court of Montgomery.

Heard before the Hon. THOMAS M. ARRINGTON.

This appeal is prosecuted from a decree of a judge of the City Court denying to the appellant corporation a writ of *mandamus* to compel the appellee to remove and lower its pipes on certain streets in the city of Montgomery. On the hearing of the evidence as introduced, the judge of the City Court denied the application for *mandamus*, on the ground that the petitioner, having supervised and directed the laying of the pipes, by and through its consulting engineer, did not offer to pay the expense of removing and lowering the pipes. All the other facts are sufficiently set forth in the opinion.

W. S. THORINGTON, for appellant.

J. M. FALKNER, *contra*.

CLOPTON, J.—The City Council of Montgomery applied to the City Court to grant a *mandamus*, compelling the Capital City Water Company to remove its pipes where they pass through the public sewer on each side of a public street. The petition shows that the water company is a corporation created and organized under the laws of this State, and engaged in the business of supplying water to the city and its inhabitants. It alleges, as the ground on which the *mandamus* is asked, that the pipes laid in certain streets, which pass through two sewers, one on the east, and the other on the west side of North Union Street, interfere with the free passage of the water along the sewers, and intercept and obstruct the debris, sand and drift, causing the water to overflow the street and sidewalk, rendering the same inconvenient and unsafe, and damaging adjacent private property.

The water works were constructed under a contract with the City Council in the form of an ordinance, adopted October 7, 1885. The entire ordinance is set out in the answer of the company; but the defense is mainly based on the provisions of the first, eighth and tenth sections. By the first section, the city grants the right and authority to erect and maintain a suitable water work's pumping station, in or near the city, and to lay down and maintain and use water-mains, pipes, aque-

ducts and other fixtures, in and through any of the streets, alleys and public grounds, for the conveyance of water for the use of the city and its inhabitants, with the reservation, that the location of such mains, pipes and aqueducts may be determined by the City Council. Section eight provides, that the pipes, mains and aqueducts "shall be laid with covering not less than two feet below the established grade of the streets, alleys and public ways, whether such is the present surface grade or not; and if the established grade of any street, alley or public way shall be changed, by authority and direction of the city, after the mains, pipes or aqueducts have been laid, the city shall pay the expense of changing the grades of any pipes, mains or aqueducts that may have been laid in such street, alley or public way." The tenth section provides, "that the said city council may employ a practical hydraulic engineer to see that said works are so constructed as to properly protect the interests of said city." The answer also avers, that the location of all the mains, pipes and aqueducts in the streets, alleys and public ways was determined by the City Council; that the City Council employed a practical hydraulic engineer, and that the mains, pipes and aqueducts were located and put in such positions in the streets as were designated by the City Council and its authorized engineer, the company having nothing to do with their location; and in no case were the pipes laid with covering of less than two feet below the established grade of the street.

The proposition of the defense is, that the City Council, being clothed with authority, and reserving the right to regulate the laying of the pipes in the streets, prescribed by the ordinance how and where they should be laid; and that the company, having laid the pipes, not in the exercise of its own discretion and judgment, but under the direction of an engineer appointed by the City Council, has violated no ordinance of the City Council, nor any law or public duty. The proposition involves the authority of the City Council to surrender to a private corporation, by contract, the powers and duties in respect to the public streets conferred and imposed by the city charter, and to deprive succeeding councils, *pro tanto*, of their regulation and control. The city charter confers on the municipal authorities power, and devolves the correlative duty, to keep the streets in repair, safe and convenient for public use. That a contract surrendering such power, and having effect to disable the performance of such duty, is invalid, seems too well established to admit discussion. If conceded that the City Council has authority to contract for a supply of water for fire and sanitary purposes, yet the City Council has nas no power,

in the absence of legislative authority, to make contracts, or pass ordinances, relinquishing or abandoning the legislative or governmental powers, or divesting the corporation of its legislative discretion, or disabling it to perform its public duties. 1 Dillon on Mun. Cor., § 97. Such powers are conferred for public purposes—are public trusts, continuing in their nature, to be exercised whenever the public safety and interests may demand. If the effect of any of the provisions of the ordinance, constituting the contract between the City Council and the Capital City Water Company, be, the surrender, abrogation or abeyance of these powers and duties, so that they can not be exercised, should necessity therefor arise in the future, such provisions are against public policy and void, and do not bind their successors in office.

But, as we interpret the ordinance, such is not its intention, effect or meaning. The reservation of the right to determine the location of the pipes does not justify the inference, that the location, once determined and fixed, should be final, and operate to prevent the city thereafter exercising its power over the streets, so far as concerns the location of the pipes. It need scarcely be said, that an agreement will not be implied to do what the City Council can not expressly contract to do. The ordinance should be so construed as to give, and not destroy its effects and operation. The reservation is for the public benefit and protection, and should be so interpreted as to effectuate its purposes. These purposes can not be accomplished, if restricted to one exercise of the right. It was expressed in order to avoid any conclusion that the City Council was bargaining away the powers of the city over the streets, and is broad enough to include the right, not only to determine the location of the pipes in the first instance, but also to regulate and control their re-location and alteration, as the public necessity or convenience may demand; a contractual reservation of what the charter itself reserves, the right and power to discharge the duty to keep the streets in repair and convenient and safe for public use.—*Lou. City R'wy. Co. v. Louisville,* 8 Bush. 415.

It is not shown or claimed that the City Council, as an official body, ever acted in regard to the location of the pipes. The claim is, that the City Council determined where and how the pipes should be located, by and through the appointed hydraulic engineer, under whose supervision and direction they were laid—in other words, the City Council delegated the power to the engineer. The principle is a plain one, that the public powers are trusts devolved by law, or charter, upon the council or governing body, to be exercised by it when and in such manner as it

[City Council of Montgomery v. Capital City Water Co.]

shall judge best, and can not be delegated to others."—1 Dill. on Mun. Cor., § 96.   When the exercise of the legislative or governmental powers is involved, the officer or governing body, to whom its exercise is intrusted, can not delegate it to any other officer or person.—*Mayor & Council of Balt. v. Scharf,* 54 Md. 499; *City of Indianapolis v. Indianpolis G. & Coke Co.,* 67 Ind. 396; *Birdsale v. Clark,* 73 N. Y. 73.   But, even when literally construed, this section does not confer upon the engineer authority to determine how and where the pipes should be located, or anything else in respect to the manner in which the work should be done.   The scope of his authority and duty is, to see that the works are so constructed as to protect the interests of the city; that is, to supervise and see that they were constructed in pursuance of, and in accordance with the provisions of the ordinance.   The company, having located and laid the pipes without any direction or determination by the City Council, as such, if laid under the supervision and direction of the engineer, must be regarded as having adopted his plans as its own, and is responsible in the same manner, and to the same extent, as if the engineer had given no directions.—*Alton R. R. Co. v. Dicty,* 50 Ill. 210.   The only provision contained in the ordinance, as to the manner in which the pipes shall be laid, is, that they shall be laid with a covering of not less than two feet below the established grade of the street.   This, of course, can have no application where pipes cross open sewers; for conformity therewith would wholly obstruct the flow of the water.

Section 27 of the ordinance provides, that the Capital City Water Company shall construct and continue the water works in such manner as to interfere as little as possible with the public or private property in the city, and shall be liable for any damage to persons or property caused by the negligence of the company.   If the company so negligently passed the pipes through open sewers as to obtruct the debris, sand and drift, causing the water to overflow, thereby rendering the street inconvenient and unsafe, and damaging private property, it is liable for any injury to persons or property resulting therefrom.   The liability to individuals, as distinguished from the public, does not depend merely on the contract, but also on the negligent performance of a public duty.   Considering the ordinance as an entirety, our conclusion is, that it does not abrogate or impair the exercise of the rights and powers of the city to regulate and control the streets so as to promote and subserve the public convenience and necessity, or justify the company in laying and continuing its pipes in such manner as to render the streets inconvenient and unsafe for public use.

[Capital City Water Co. v. City Council of Montgomery.]

It is also contended, that the city should pay the expense of changing the location of the pipes; and the City Court refused the *mandamus* on the specific ground, that the city had not offered to pay the expense of removing the pipes from the sewers. This contention is founded on the provision, that if the established grade of the street is changed after the pipes are laid, the city shall pay the expense of changing them. There being no pretense that the grade of the street has been changed, this provision has no application, or effect, unless it be to exclude the idea, that the city should be responsible for the expense of changing the pipes in any other event making it necessary. In *Louisville City Rwy. Co. v. Louisville, supra*, where the same question was raised, it is said: "And as the general council could not by contract deprive itself of the power to regulate the re-construction of railways made necessary by changes in the character of pavements used upon the streets of the city, neither could it embarrass or clog its right to exercise such power, by undertaking, either expressly or by implication, to pay the expense necessarily incurred by the company in complying with the reasonable and proper regulations made by the city upon this subject." However, we need not decide as to the liability of the city to pay the expense of re-locating the pipes in the present case; for, if conceded that the city is under a moral or legal obligation to pay such expense, it constitutes no defense to this proceeding. The question must be presented for decision by some other appropriate proceeding, after the expense has been incurred.

The evidence not being set out in the bill of exceptions, we can not pass on its sufficiency to show that the water overflows so as to render the streets inconvenient and unsafe.

Reversed and remanded.