Argued Feb. 28, decided March 26, rehearing denied April 9, 1912.

## McKEON *v.* CITY OF PORTLAND.

. [122 Pac. 291.]

MUNICIPAL CORPORATIONS—ANNEXATION—CONSTITUTIONAL AND STATU-
TORY PROVISIONS.

The city of Portland was chartered by an act approved January 23, 1903, and the adjoining city of St. Johns was created in 1907 by its legal voters under the sanction of Section 2, Article XI, Constitution of Oregon, which exempted its charter from any direct change or destruction by the legislative assembly. *Held,* that an attempted annexation of the city of St. Johns to the city of Portland by a proceeding under chapter 1, article 4, of the Portland charter, consisting of a petition to annex territory exactly coincident with the municipal limits of the city of St. Johns with submission of the question to the voters of that territory, and its adoption by a majority of the voters, was ineffectual; the city of St. Johns having no power to change or repudiate its municipal functions.

Sig. 13

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by R. W. McKeon, C. C. Oihus, T. H. Cochran, Joseph McChesney, J. B. Holbrook, Peter Autzen, A. M. Stearns, M. L. Holbrook, Portland Manufacturing Company, a corporation; Peninsula Iron Works, a corporation; Lawrence Holbrook, and others, against the City of Portland, a municipal corporation; Joseph Simon, as mayor of the city of Portland; A. L. Barbur, as auditor of the city of Portland; George L. Baker, councilman of the city of Portland; John Annand, councilman of the city of Portland; H. A. Breding, councilman of the city of Portland; George B. Cellars, councilman of the city of Portland; T. J. Concannon, councilman of the city of Portland; H. J. McInnis, councilman of the city of Portland; M. J. Driscoll, councilman of the city of Portland; Geo. D. Dunning, councilman of the city of Portland; Joseph T. Ellis, councilman of the city of Portland; K. K. Kubli, councilman of the city of Portland; J. H. Burgard, councilman of the city of Portland; R. E. Menefee, councilman of the city of Portland; A. G. Rushlight, councilman of the city of Portland; H. W. Wallace, councilman of the city of Portland; Frank E. Watkins, councilman of the city of Portland; city of St. Johns; K. C. Couch, as mayor of the city of St. Johns; F. A. Rice, as recorder of the city of St. Johns. The facts are as follows:

During the occurrences mentioned in the pleadings in the cause the city of Portland was a municipal corporation deriving its powers from an act of the legislative assembly entitled, "An act to incorporate the city of Portland, Multnomah County, State of Oregon, and to provide a charter therefor, and to repeal all acts or parts of acts in conflict therewith," approved January 23, 1903; and the city of St. Johns was another municipal corpo-

ration operating as such under a charter formed and enacted by its legal voters under the sanction of Section 2, Article XI, Constitution of Oregon, the same being entitled, "An to incorporate the city of St. Johns, Multnomah County, State of Oregon, and to provide a charter therefor, and to repeal all acts or parts of acts in conflict therewith," and adopted by the people of St. Johns at an election called for that purpose in the year 1907. Both cities had been previously incorporated by acts of the legislative assembly and they adjoin each other. In article 4 of chapter 1 of the Portland Charter is laid down a procedure for the annexation of territory contiguous to the limits of that city. In substance, it requires that the matter shall be initiated by presenting to the Portland council a petition defining the boundaries of the outlaying district and signed by at least 15 per cent of the qualified voters therein. The council, on receipt of the petition shall consider and determine whether annexation of the designated area shall be submitted to the voters thereof and by a resolution adopted by a two-thirds vote at least 30 days prior to the time of the pouplar vote, may submit the question to the electors of the proposed addition at the next general election held therein. Such a petition was presented to the council of the city of Portland, describing territory exactly coincident with the municipal limits of the city of St. Johns, and by its resolution of September 14, 1910, the Portland council decided to submit the question to the voters within those boundaries at the general election held throughout the State November 8, 1910. At that election the majority of votes cast by the electors residing in the corporate limits of the city of St. Johns and who voted on that question was given in favor of annexation. It appears that in the effort to amalgamate the two cities, all the affirmative action there was consisted of that taken by the mayor and common

council of Portland in pursuance of the petitions of 15 per cent of the citizens of St. Johns followed by the votes at the election already alluded to. No action was taken by the mayor and common council of St. Johns. At this juncture the plaintiffs, being freeholders and taxpayers residing within the limits of St. Johns, alleging that their burden of taxation would be increased by the proposed consolidation without any resulting benefit to them, brought this suit to enjoin further proceedings under the scheme already inaugurated. Some issues were raised by the pleadings on matters not here mentioned, but the foregoing statement of admitted facts is deemed sufficient for the purposes of this opinion. On the hearing the circuit court dismissed the bill, and the plaintiffs appeal.        REVERSED: DECREE RENDERED.

For appellants there was a brief and an oral argument by *Mr. George J. Perkins.*

For respondents there was a brief over the names of *Mr. Frank S. Grant,* City Attorney, *Mr. William C. Benbow, Mr. Charles W. Fulton, Mr. John F. Cahalin* and *Mr. A. M. Esson,* with oral arguments by *Mr. Grant* and *Mr. Fulton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

In its efforts to enlarge its boundaries, the city of Portland, in this instance, has encountered another municipal corporation. It is not virgin territory which Portland would acquire by the proceedings under consideration. Here are two cities, instrumentalities of government, and it is incumbent upon this court to determine whether the end sought to be accomplished and of which the plaintiffs complain is in harmony with the law of their existence. Hitherto the city of St. Johns was an independent municipality, having an existence distinct from any other organization of its kind. Under Section 2, Article XI, Constitution of Oregon, its charter

was exempt from any direct change or destruction by the legislative assembly of the State. Its legal voters had the power to enact or amend the law giving it a legal entity, but they have no power to repeal that instrument. Having once assumed municipal functions and obligations either of their own volition or at the behest of the legislature, under the former constitution, the voters of St. Johns could never repudiate them or lay them aside except under sanction of the whole people of the State in whom now resides the power formerly exercised by the legislative assembly in that behalf. Dillon, Municipal Corporations (5 ed.) § 332; *Montgomery* v. *Capital City Water Co.,* 92 Ala. 361 (9 South. 339; *Illinois Central Hospital* v. *Jacksonville,* 61 Ill. App. 131; *Gale* v. *Kalamazoo,* 23 Mich. 344 (9 Am. Rep. 80) ; *Brick Presbyterian Church* v. *New York,* 5 Cow. (N. Y.) 540.

The constitution has not provided for municipal suicide. Yet this is what is proposed to be accomplished by the proceedings under consideration. The charter of St. Johns would be as effectually relegated to desuetude if the election described were to be upheld as if the people of the entire State should by an initiative measure in express terms repeal that charter and that of the city of Portland and consolidate the two cities under a new municipal constitution. Indeed, the Portland charter describes the results to be attained in these words:

"The inhabitants of such annexed territory shall become subject in all respects to the jurisdiction of the authorities of said city (Portland), and the jurisdiction of any public authority exercised theretofore in such annexed territory shall, so far as it is in conflict with the corporate authority of said city (Portland), thereupon cease and determine."

This result is not in harmony with the later constitutional provisions the people have adopted, the spirit of which is segregation rather than consolidation in

municipal governments. Whatever may have been the power of the city of Portland under the terms of its charter granted by the legislative assembly to absorb other municipalities, yet it must yield to the later restrictions of the constitution forbidding the legislative assembly to enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town. The reason is that, the authority to do this having been taken away from the legislative assembly, the power of the city of Portland, resting upon the act of that lawmaking body, must fail also. The city's energy in that direction cannot survive that which gave it force. The branch of a tree cannot exist without the trunk. In brief, the confirmation of the scheme in question would amount to a repeal of the charter of St. Johns— a result not within the scope of any prerogative vested in either of the cities or their electorate.

We deem it unnecessary to consider the other questions presented at the hearing.

The decree of the court below is reversed, and one entered here according to the prayer of the complaint.

REVERSED: DECREE RENDERED.