Submitted on briefs without argument September 2, decided September 9, 1913.

## STATE EX INF. TONGUE *v.* GILBERT.

(134 Pac. 1038.)

**Municipal Corporations—Consolidation—Statutory Provisions.**

Section 3210, L. O. L., providing that two or more continuous municipal corporations may consolidate into one corporation, and prescribing the procedure to accomplish this purpose, does not violate Article XI, Section 2, of the Constitution, as amended, providing that corporations may be formed under general laws, but shall not be created by special laws, that the legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town, and that the legal voters of every city or town are thereby granted power to enact and amend their municipal charter subject to the Constitution and criminal laws of the state, since this constitutional provision does not infringe on the right of the legislature to make general laws for the formation of corporations, but is directed solely against action by the legislature affecting only a particular municipality, city or town.

From Clatsop: JAMES A. EAKIN, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is an action in the nature of a *quo warranto* by the State of Oregon, upon the information of E. B. Tongue, district attorney in and for the fifth judicial district of Oregon, against Alexander Gilbert, W. E. Lewis, Louis Heinrich, Monroe Grimes, William B. Dresser, J. E. Brallier, D. Henshaw, J. L. Berry, F. S. Godfrey and J. E. Dillian.    The facts appear to be as follows:

The town of Seaside and the City of West Seaside, at the times mentioned in the complaint herein, were contiguous, municipal corporations in Clatsop County, the former having been incorporated by various acts of the legislative assembly culminating by amendatory laws in the act of February 24, 1903, and the latter by virtue of the act of February 22, 1905.    Moving under Section 3210, L. O. L., on petitions contemporaneously filed with the recorder of each municipality, each city government instituted proceedings resulting in the consolidation of the two towns under the name "City of Seaside" by an election held November 4, 1911.    The defendants were afterward elected to the various official positions in the new city.    The former officers of each corporation abandoned their stations, and have ceased to act.    The district attorney for the fifth judicial district in which Clatsop County is situated, brought this action in the nature of *quo warranto* to determine the legality of the defendants' claim to act as such public officers.    All the allegations of the complaint narrating in detail the history of the transaction are admitted, except the one amounting to a legal conclusion to the effect that the defendants have wrongfully and without right usurped the municipal power of the former corporations.    It is stipulated in the

record: "That the only question sought to be presented by the complaint herein is as to the constitutionality and legality of Sections 3209, 3210, L. O. L., it being conceded by plaintiff that, if these sections are constitutional and legal, then all proceedings were regular." The Circuit Court rendered judgment dismissing the action, and the plaintiff appeals. Submitted on briefs without argument under the proviso of Rule 18 of the Supreme Court: 56 Or. 622 (117 Pac. xi).

AFFIRMED.

For appellant there was a brief over the names of *Mr. Edmund B. Tongue,* District Attorney, *Mr. L. L. Tracey* and *Mr. J. T. Jeffries.*

For respondents there was a brief over the name of *Mr. Edward E. Gray.*

MR. JUSTICE BURNETT delivered the opinion of the court.

In 1893 the legislative assembly passed an act (Laws 1893, p. 119), general in its terms, providing not only for the incorporation of new towns and cities, but also for the consolidation of two or more contiguous, municipal corporations, as well as for the enlargement of the boundaries of municipal corporations, and enacting a general charter for cities and towns organized by virtue of the act. One section of that law, being Section 3210, L. O. L., reads as follows:

"Two or more contiguous municipal corporations may become consolidated into one corporation after proceedings had as required in this section. The council or other legislative body of either of such corporations shall, upon receiving a petition therefor signed by not less than one fifth of the qualified electors of each of

such corporations, as shown by the votes cast at the
last   municipal   election   held · in   each   of   such · cor-
porations,   submit   to   the   electors   of   each   of   such
corporations   the   question   whether   such   corporations
shall be consolidated into one corporation.   Such coun-
cils or legislative bodies shall designate a day upon
which a special election shall be held in each of such
corporations,   to   determine   whether   such   consolidation
shall be effected, and shall give written notice thereof
to the council or other legislative body of each of the
other such corporations, which notice shall designate
the name of the proposed new· corporation.   It shall
thereupon be the duty of such council or legislative
body of each of the corporations so proposed to be con-
solidated to give notice of such election by publication
in a newspaper of general circulation in such corpora-
tion for the period of four weeks prior to such election.
Such notice shall distinctly state the proposition to be
so submitted, the name of the corporations so proposed
to be consolidated, the name of the proposed new cor-
poration, and shall invite the electors to vote upon such
proposition, by  placing upon their  ballots the words
'for consolidation,' or 'against consolidation,' or words
equivalent thereto.   The councils or legislative bodies
of each of such corporations shall meet in joint con-
vention at the usual place of meeting of the council or
legislative body of that one of the corporations having
the largest population, shown by the last state census,
on the Monday next succeeding the day of such election
at 1 o'clock P. M., and proceed to canvass the votes
cast thereat.   The votes cast in each of such corpora-
tions shall  be canvassed separately, and  if it shall
appear upon such canvass that a majority of the votes
cast in each of such corporations is for consolidation,
such joint convention, by an order entered upon their
minutes, shall cause the clerk, or other officer perform-
ing the duties of clerk of the council or legislative body,
at whose place of meeting such joint convention is held,
to make a certified abstract of such votes; which ab-

stract shall show the whole number of electors voting at such election in each of such corporations, the number of votes cast in each for consolidation, and the number of votes cast in each against consolidation. Such abstract shall be recorded upon the records of the council or legislative body of each of such corporations; and immediately upon the recording thereof, it shall be the duty of the clerk, or other officer performing the duties of clerk of each such council or legislative body, to transmit to the Secretary of State a certified copy of such abstract. Immediately after such filing, the council or legislative body of that one of such corporations having the greatest population as shown by the last state census, shall call a special election to be held · in such new corporation for an election of the officers required by law to be elected therein, which election shall be held within three months thereafter. Such election shall be called and conducted in all respects in the manner prescribed, or that may hereafter be prescribed by law, and shall be canvassed by the council or legislative body so calling the same, who shall immediately declare the result thereof and cause the same to be entered upon its records. From and after the date of such entry, such corporations shall be deemed to be consolidated into one corporation under the name and style of the city or town, as the case may be, of —— (naming it), with the rights and privileges conferred by law or which may hereafter be conferred by general statutes, duly enacted by the legislative assembly of this state, and the officers elected at such election shall be entitled immediately to enter upon the duties of their respective offices, upon qualifying in accordance with law, and shall hold such office respectively until the next general municipal election to be held in such city or town, and until their successors are elected and qualified, unless removed for cause."

Subsequently, Article XI, Section 2, of the Constitution, was amended to read as follows, so far as appli-

cable to the present procedure: "Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town. The legal voters of every city or town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon." It is not deemed necessary to quote the remainder of that section, applicable only to the control of the liquor traffic.

This provision of the fundamental law does not in any way infringe upon the right of the legislature to make general laws for the formation of corporations. The inhibition of that section is directed solely against action by the legislature affecting only a particular municipality, city, or town. As stated by Mr. Justice McBride, in *Thurber* v. *McMinnville,* 63 Or. 410 (128 Pac. 43), the statute already mentioned had not been repealed when these proceedings happened, nor did the constitutional provision disturb that legislative enactment. It was then a general law establishing the procedure for the formation of municipal corporations, however it may be affected by the subsequent act of February 26, 1913 (Laws 1913, p. 689), Section 11 of which purports to repeal the provisions of the act of 1893, relating to the organization and consolidation of cities and towns without mentioning repeal in the title of the new law. There were two classes of ingredients available in their construction under that statute. The one was new territory which had never been subjected to municipal government; the other, contiguous municipalities already established. Given such conditions and such components under a general law, a new corporation could be formed in the manner prescribed and in force at the time. It is conceded that the legislative directions mentioned have been strictly followed, and

hence the consolidation comes within the constitutional sanction that "corporations may be formed under general laws."

The plaintiff cited *McKeon* v. *City of Portland,* 61 Or. 385 (122 Pac. 291). In that case the City of Portland, by virtue of the particular provisions of its charter, attempted to amalgamate the adjoining city of St. Johns. No official action was taken by the latter municipality. The procedure was inaugurated solely upon the petition of some individual residents of St. Johns, and by virtue of the provisions of the special act incorporating the City of Portland. It was an effort of Portland to absorb St. Johns under the charter of the former in the absence of any motion or consent of the latter. There was no concerted action between the two municipalities as such, as required by Section 3210, L. O. L., so that the Portland-St. Johns case is clearly distinguishable from the present one.

The question was raised incidentally also in this case about the legality of the acquisition by the town of Seaside prior to consolidation of certain territory adjacent to it, but which had never been included in any municipality. It appears, however, that the procedure approved by this court in the case of *McBee* v. *Town of Springfield,* 58 Or. 459 (114 Pac. 637), based upon the act of 1893, was followed in this instance, so that a vote was taken not only in the town of Seaside, but also in the outlying territory sought to be incorporated in the boundaries of the municipality; the election resulting in a majority being cast in both instances in favor of the annexation of the territory.

The result is that the judgment of the Circuit Court must be affirmed.

Affirmed.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Ramsey concur.