Argued September 9, affirmed September 21, rehearing denied November 23, 1915.

## SCHOOL DISTRICT NO. 35 *v.* HOLDEN.*

(151 Pac. 702.)

**Schools and School Districts—Boundaries—Change of.**

1. Article IV, Section 1a, of the Constitution, declares that the initiative and referendum powers are reserved to the legal voters of every municipality and district, in and for their several municipalities and districts. Article XI, Section 2, declares that corporations may be formed under general laws, and that no charter of any municipality, city, or town shall be amended or repealed by the legislature, but that the legal voters may enact or amend their charters. Section 4021, L. O. L., provides for changing the boundary of school districts by the district boundary board. This statute was in force prior to the adoption of Article XI, Section 2, of the Constitution. *Held* that, as the statute which was part of the general law formed the charter, if there was one, of the school district, changes might be made by the district boundary board according to the statute without submitting the matter to the electorate; the change not being made by the legislative assembly.

From Tillamook: Webster Holmes, Judge.

Department 1. Statement by Mr. Justice Burnett.

In this suit School District No. 35 of Tillamook County, complaining and styling itself a municipal corporation, describes its own boundaries, as well as those of two other school districts of that county, and alleges the official station of the defendant, J. C. Holden to be that of county clerk, and the other defendants county judge, commissioners and county school superintendent, composing the district boundary board on March 8, 1912. It further charges that this board, in pursuance of a petition and regular proceedings under Section 4021, L. O. L., took from the plaintiff district part of its territory and gave it to the other districts mentioned; the history of the pro-

---

*Generally as to matters relating to the initiative and referendum, see notes in 11 L. R. A. (N. S.) 1092; 33 L. R. A. (N. S.) 969; 50 L. R. A. (N. S.) 196. Reporter.

ceeding being set out in detail in the complaint. A demurrer to the primary pleading was sustained, and the suit dismissed. Of this result, the plaintiff complains on appeal to this court.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondents there was a brief over the names of *Mr. H. T. Botts* and *Mr. M. J. Gersoni,* with an oral argument by *Mr. Botts.*

MR. JUSTICE BURNETT delivered the opinion of the court.

Section 4021, L. O. L., ordains a procedure to be observed in changing the boundaries of school districts, the details of which it is not necessary to rehearse, because no question was made at the argument that they were not observed in this instance. The sole contention presented by the plaintiff is that the district boundary board, deriving its powers, as it does, from the legislative assembly, has no authority to change the boundaries of a school district, because that is tantamount to the amendment of the charter of a municipality within the inhibition of Section 2, Article XI, of the state Constitution. Stated otherwise, the plaintiff maintains that a change in the boundaries of the plaintiff district can only be accomplished through the initiative power described in Section 1a, Article IV, and Section 2, Article XI, of the state Constitution. These portions of the organic law, so far as applicable to the question in hand, read thus:

Section 1a, Article IV:

" * * The initiative and referendum powers reserved to the people by this Constitution are hereby

further reserved to the legal voters of every munici-
pality and district, as to all local, special, and munici-
pal legislation, of every character, in or for their
respective municipalities and districts.   The manner
of exercising said powers shall be prescribed by gen-
eral laws, except that cities and towns may provide for
the manner of exercising the initiative and referendum
powers as to their municipal legislation. * * ''

Section 2, Article XI:

''Corporations may be formed under general laws,
but shall not be created by the legislative assembly by
special laws.   The legislative assembly shall not enact,
amend, or repeal any charter or act of incorporation
for any municipality, city, or town.   The legal voters
of every city and town are hereby granted power to
enact and amend their municipal charter, subject to
the Constitution and criminal laws of the State of
Oregon.''

Speaking of school districts, Mr. Justice Moore, in
*School District No. 48* v. *School District No. 115,* 60
Or. 38 (118 Pac. 169), said:

''These divisions are vested with certain powers,
which they can employ in the particular manner pre-
scribed.   As agencies of the state, they have no vested
right to the property which they may acquire, but hold
it in trust for the general public, and such *quasi* cor-
porations may be changed at the will of the power
creating them. * * A school district sustains no higher
relations to the state than a county occupies, and the
rule is settled that the legislative department may
divide counties at pleasure, apportioning the assets
and burdens in such manner as may be deemed just
and reasonable.''

Writing about the excerpts from the organic act
above mentioned in *Kiernan* v. *Portland,* 57 Or. 454,
467 (112 Pac. 402, 403, 37 L. R. A. (N. S.) 332), Mr.
Justice King used this language:

"It will be observed from the first sentence in Section 2 that no restriction is placed upon the legislature with respect to the enactment of general laws; the exception being that no special laws creating or affecting the municipalities shall be enacted by the legislature. Under all the rules of construction, this exception reserves to the legislative department the right, whether by the people directly through the initiative, or indirectly through the legislature, to enact general laws upon the subject, making it clear that the inhibition in the next sentence has reference to special laws. * * Our holding is that the state may, by constitutional provisions, directly delegate to municipalities any powers which it, through the legislature, could formerly have granted indirectly. All the prerogatives attempted to be exercised by Portland in the construction of the Broadway bridge formerly could have been granted by the legislature, and the power to provide therefor, having been delegated to the city by amendment to our organic laws, is valid, and the right to exercise such powers will continue until such time as changed by general enactments of the law-making department of our state, provision for which may be made by the legislature by general laws, applying alike to all municipalities of that class, or by the people through the initiative, by the enactment of either general or special laws on the subject."

Further, in *State ex rel.* v. *Port of Tillamook,* 62 Or. 332, 341 (124 Pac. 637, 640, Ann. Cas. 1914C, 483), Mr. Justice Bean says:

"Such municipal corporations are always subject to the control and regulation of the lawmakers of the state in the manner directed by the Constitution: *City of McMinnville* v. *Howenstine,* 56 Or. 451, 456 (109 Pac. 81). While these public corporations are capable of adopting and amending their charter, they still continue to be agencies of the state. A general control is left in the legislative assembly."

Again, Mr. Justice Eakin, in *Riggs* v. *Grants Pass,* 66 Or. 266, 271 (134 Pac. 776, 778), says:

"Article XI, Section 2, of the Constitution confers power and authority upon cities to form their own charters and make their own laws within their municipal needs; that is, in local and special municipal legislation. Authority beyond that must come from the sovereign, namely, the legislature, by general laws or by the people by general or special laws."

Referring to Section 2, Article XI, of the Constitution, it is said in *State ex rel.* v. *Gilbert,* 66 Or. 434, 439 (134 Pac. 1038):

"This provision of the fundamental law does not in any way infringe upon the right of the legislature to make general laws for the formation of corporations. The inhibition of that section is directed solely against action by the legislature affecting only a particular municipality, city, or town."

If we concede that the quoted utterances of this court are judicial heresies as the plaintiff's argument proceeds, and that school districts are full-fledged municipal corporations, having each an autonomy all its own, it still remains to consider whether they have charters within the meaning of Section 2, Article XI, of the Constitution, and whether the procedure described in the complaint constitutes an amendment of such an instrument. Dismissing for the moment the idea that a municipal charter is a special legislative act conferring upon a particular municipality powers and privileges peculiar to itself, we must find a charter for the plaintiff, if at all, in the general laws enacted by the legislative assembly affecting school districts, for it is not pretended that any other rule of action affecting the plaintiff has been established either by the people of the state at large through the initiative

process or by similar legislation enacted by the legal voters resident within the boundaries of the plaintiff school district. It is manifest that a school district's rule of existence, operation and treatment is found in the statutes hitherto enacted by the legislative assembly in the exercise of its constitutional authority to "provide by law for the establishment of a uniform and general system of common schools": Section 3, Article VIII, of the Constitution.

In substantially the present form the rule for changing the boundaries of school districts through the action of a district boundary board has been in existence from a date prior to the adoption of the amended form of Section 2, Article XI. It is one of the essential features of the constituent law of school districts. From the viewpoint of the plaintiff it might be called one of the terms of its charter. For all that appears in the complaint, the procedure described whereby the plaintiff was deprived of part of its territory was in strict accordance with the statute. No enactment from any legislative source whatever has in any manner prescribed the boundaries of the plaintiff district. In this respect the case in hand is easily differentiated from such as *Cooke* v. *Portland*, 69 Or. 572 (139 Pac. 1095); *Thurber* v. *McMinnville*, 63 Or. 410 (128 Pac. 43); *McKeon* v. *Portland*, 61 Or. 385 (122 Pac. 291); *State ex rel.* v. *Port of Tillamook*, 62 Or. 332 (124 Pac. 637, Ann. Cas. 1914C, 483). In all those cases the constituent act establishing the municipality in question described in explicit terms the boundaries in question. The delimitation of its exterior lines was part and parcel of its charter in each instance. In the case of school districts the constituting act has in no wise ever described the boundaries of any particular district, but has committed the establishment and control

of them to a district boundary board. That body, in making such changes, simply administers, and does not amend the laws under which the plaintiff district exists even though we may style those general enactments the charter of the complainant here.

Much was forcefully said at the argument about the evils of gerrymandering as exemplified in the boundaries of the districts named in the complaint; but we have nothing to do with such administrative questions. We have before us in this instance only a question of authority and not of the manner in which it is exercised. The proceedings described in the complaint are not open to the objection urged against them by the plaintiff.

The decree of the Circuit Court is affirmed.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE BENSON concur.

MR. JUSTICE HARRIS concurs in the result.