Argued April 13; demurrer overruled and peremptory writ issued
May 18, 1943

# STATE EX REL. CUTLIP ET AL. *v.* COMMON COUNCIL OF CITY OF NORTH BEND ET AL.

### (137 P. (2d) 607)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK and HAY, Associate Justices.

*J. W. McInturff,* of Marshfield (McInturff & McInturff, of Marshfield, on the brief) for plaintiff.

*John G. Mullen* and *Harold A. Olson,* both of North Bend, for defendants.

BAILEY, C. J. This is an original proceeding in mandamus to require the members of the common council of the city of North Bend, Oregon, to meet with the members of the common council of the city of Marshfield, Oregon, and determine whether the petitions for the consolidation of the cities of Marshfield and North Bend and the territory lying between the corporate limits of the two cities are in proper form and contain the necessary number of names of qualified signers. The proceeding is brought in the name of the State of Oregon on the relation of three individuals as qualified electors, one from each city and one from the unincorporated territory between the two cities. The defendants have demurred to the alternative writ, on the ground that it "does not state facts sufficient to state a cause of action to justify the issuance of a mandatory writ of mandamus against" the defendants.

The principal question here involved is that of the constitutionality of chapter 459, Oregon Laws 1941. That chapter provides for the creation of incorporated cities or towns "from adjoining or nonadjoining incorporated cities or towns, or from two or more adjoining or nonadjoining cities or towns and adjoining or nonadjoining unincorporated territory".

The proceedings to create incorporated cities are required to be initiated by petitions signed by not less than ten per cent of the registered voters of each incorporated city and unincorporated territory included in the proposed incorporation. The petitions are to be

addressed to the "councils or governing bodies" of the cities or towns intended to be included, and are to state the name of the proposed municipal corporation, which may, but need not, be the name of either of the cities involved. If unincorporated territory is included, the petition is required to contain a legal description of such territory. The petitions are to be similar in form and are to be filed in the office of the clerk or recorder of either of the cities, or "a part of said petitions may be filed in said office in one of said cities or towns and another part of said petitions in a similar office in another of said cities or towns" included in the proposed municipality.

Upon the filing of the petitions bearing the required number of signatures, "the common councils or the governing bodies of such cities" are required to meet in joint convention at the usual place of meeting of the council or governing body of the city "having the largest population as shown by the last federal census", within twenty days after the filing of such petitions; and at such meeting the common councils or other governing bodies of the cities included in the proposed municipality are required to examine the petitions, and if the same are found to be in proper form and to contain the requisite number of qualified signatures, the common council of each of the municipalities included in the proposed incorporation must appoint two residents of its respective municipality, as members of a committee to be known as the charter commission. If unincorporated territory is included, the county judge is required to appoint to such commission two legal voters residing in the unincorporated territory; or if no legal voters reside in that territory, the county judge is to appoint not to exceed two persons owning real property in the territory.

The charter commission is charged with the duty of preparing a charter for the proposed incorporated city, within sixty days after the members thereof have been appointed. In the event that the members of the commission can not unanimously agree upon a charter for the proposed municipality, the charter proposed by the majority and that proposed by the minority shall both be submitted to the voters at the election held for the purpose of voting on the question of creating the proposed municipal corporation. The suggested charter receiving the majority vote at such election "shall be the charter of the newly incorporated city or town in the event that the legal voters also by a majority vote favor the creation of the municipal corporation proposed by said petitions." The charter commission is empowered to employ at the expense of the cities concerned "such legal or other assistance as said commission may deem advisable to assist it in the preparation of such charter or the performance of its duties and such expense shall be equally borne by said cities or towns."

After the charter commission has prepared and adopted a proposed charter or charters, copies of the same are required to be filed with the common councils of the incorporated cities. Within thirty days thereafter the common councils of the cities involved are required to meet in joint convention at the usual place of meeting of the council of the city having the largest population "and select a date for the election to be not earlier than sixty days nor more than one hundred twenty days after the filing of the copies of the proposed charter or charters". In the event that the common councils at such joint convention are unable to agree upon a date and other details for the election, the duty is imposed upon the county court of the county

in which the proposed municipality is located to fix a date and determine the manner in which the election "shall be called, held and conducted". Notice of the election is required to be published once a week for four consecutive weeks in a newspaper of general circulation in the area constituting the proposed municipal corporation. Provision is made for posting notices of the election in the event that there is no newspaper meeting the requirements of the statute.

After the election has been held the councils of the cities involved are required to meet in joint convention, at a place as hereinabove described, and together canvass the votes cast in each incorporated and unincorporated area. And if it appears upon such canvass that the majority vote cast in each incorporated city and unincorporated territory is for the creation of the proposed new city, the joint convention is required to prepare a certified abstract of such votes, which abstract shall show the whole number of electors voting at such election in each incorporated and unincorporated territory, and the number of votes cast in each in favor of and against the creation of the proposed municipal corporation.

The joint convention is also required to canvass the votes cast on the question of adoption of the charter, and if it appears that a majority of the votes cast by those voting on that question is "in favor of the adoption of the charter proposed by the charter commission, in the event one proposed charter only has been submitted, or, in the event alternative charters have been submitted, if one of the same is favored by a majority of the voters voting at such election," the joint convention is required to cause to be prepared an abstract of the votes so cast.

The abstracts of votes on both questions submitted are required to be recorded upon the records of the

council of each of the cities concerned, and immediately thereafter certified copies of the abstracts of votes, together with a certified copy of the charter adopted, are to be transmitted to the secretary of state.

Within thirty days after the election the council of the incorporated city having the largest population is required to call a special election "to be held in such newly formed municipal corporation for an election of the officers required by the charter adopted by the majority of the voters . . . which election shall be held within three months after the same is called." The council of the city calling the election is required to canvass the vote, declare the result thereof and cause the same to be entered upon its records. "From and after the date of such entry, such incorporated cities or towns and unincorporated territory, if any, shall be deemed and considered as and shall be one municipal corporation under the name and style of the city or town" set forth in the petitions.

The petitions for incorporation of City of Coos Bay, the proposed new municipality, were addressed to the common councils of both the cities, Marshfield and North Bend, Oregon, and were filed with the city recorder of Marshfield on December 21, 1942. They contained the names of more than ten per cent of the registered voters of each city and of the territory lying between the cities, sought to be included in the new municipality, and in all respects conformed strictly to the requirements of chapter 459, *supra.*

According to the 1940 federal census, the population of North Bend was 4,262 and that of Marshfield 5,259. The two cities are separated by an unincorporated strip of land approximately 1,200 feet wide, which is proposed to be included with North Bend and

Marshfield in the municipality to be named City of Coos Bay.

After the petitions were filed, the common council of Marshfield on December 21, 1942, passed a resolution fixing January 6, 1943, at eight o'clock p. m., as the time, and the council chamber of the city of Marshfield as the place for the joint convention of the common councils of North Bend and Marshfield, and instructed the recorder of the city of Marshfield to notify the mayor and members of the common council of the city of North Bend of the time and place appointed. The mayor and members of the council of North Bend were accordingly notified, but they have refused and continue to refuse to meet with the common council of the city of Marshfield in joint convention. The relators seek through mandamus to compel them to comply with the provisions of chapter 459, Oregon Laws 1941.

The first proposition urged by the defendants in support of their demurrer is that chapter 459, *supra,* contravenes article XI, §§ 2 and 2-a, and article IV, § 1-a, of the Oregon constitution. They assert that the effect of the 1941 act is to amend the charters of both North Bend and Marshfield, and that under the provisions of article XI, § 2, and article IV, § 1-a, the authority to amend a municipal charter is vested exclusively in the legal voters of the municipality.

Article XI, § 2, is in part as follows:

"Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon".

Section 1-a of article IV, as far as material here, is as follows:

". . . The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts."

■ These two sections of the constitution were adopted on the same date, June 4, 1906, and, as has been said many times by this court, so far as they relate to the same subject-matter, should be read and construed together: *State ex rel. v. Port of Astoria*, 79 Or. 1, 154 P. 399. During the first decade after the adoption of these sections as amendments of the constitution, this court "did not follow an unswerving course when considering the right of the legislature to enact general laws affecting the intramural powers of cities." The opinions of the court for the most part, however, during that period, stated "in plain and unmistakable language that the legislature was not prohibited from passing general laws concerning cities and towns, while only a few of them held that the legislature was prohibited from passing general laws regulating intramural authority": *Lovejoy v. Portland*, 95 Or. 459, 188 P. 207.

In *Burton v. Gibbons*, 148 Or. 370, 36 P. (2d) 786, after referring to its conflicting prior opinions on the construction of the above-mentioned constitutional amendments, the court observed:

". . . This controversy was not finally settled until the decisions in State ex rel. v. Port of Astoria, 79 Or. 1 (154 P. 399); Rose v. Portland, *supra* [82 Or. 541, 162 P. 498], and Lovejoy v. Portland, 95 Or. 459 (188 P. 207), were rendered, when it became finally settled that a statute of general application

throughout the state would supersede the provision of any charter or any ordinance in conflict therewith. In the Rose case, where the question was exhaustively considered by Mr. Justice Harris, it was held, with the entire concurrence of all the members of the court, that:

" '. . . The legislature has the right to pass a general law concerning municipalities, cities and towns; the right is contained in the constitution; and therefore when the legal voters of a city or town enact or amend a charter they do so subject to the right of the legislature to pass a general law because their right to enact or amend their charter must be exercised "subject to the constitution".'

"Since that decision, all later cases have approved that ruling and it is now settled that, within the limits prescribed by the other provisions of the state constitution and of the federal constitution, the power of the legislature to enact a general law applicable alike to all cities is paramount and supreme over any conflicting charter provision or ordinance of any municipality, city or town": citing many authorities.

The question involved in *Burton v. Gibbons*, supra, was whether a state law which empowered a city to issue and sell refunding bonds without submitting the matter to a vote of the people was violative of article IV, § 1-a, and article XI, § 2, of the constitution, in that the effect of it would be to amend the charter of the city of Reedsport, Oregon. The legislative act was held constitutional, as it was applicable alike to all incorporated cities. Inasmuch as this is now the established view, it is unnecessary to examine the early cases construing the constitutional amendments herein discussed.

The defendants place much reliance upon the case of *McKeon v. Portland*, 61 Or. 385, 122 P. 291. Therein

the court held that the attempt on the part of the city of Portland to annex the city of St. Johns, an incorporated municipality, was invalid. Both cities had been incorporated by special acts of the legislative assembly. The charter of the city of Portland prescribed the procedure for the annexation of territory contiguous to the limits of that city. It provided that annexation should be initiated by presenting to the Portland city council a petition setting forth the boundaries of the area proposed to be annexed, signed by at least fifteen per cent of the qualified voters in that area. Upon receipt of the petition the council was required to "consider and determine whether annexation of the designated area shall be submitted to the voters" of such area. The matter was submitted to the voters of the city of St. Johns and they, by a majority vote, favored annexation. No action was taken by the mayor and common council of St. Johns. In ruling that the attempted annexation was invalid, this court said:

". . . Under section 2, article XI, constitution of Oregon, its [of the city of St. Johns] charter was exempt from any direct change or destruction by the legislative assembly of the state. Its legal voters had the power to enact or amend the law giving it a legal entity, but they have no power to repeal that instrument. Having once assumed municipal functions and obligations either of their own volition or at the behest of the legislature, under the former constitution, the voters of St. Johns could never repudiate them or lay them aside *except under sanction of the whole people of the state in whom now resides the power formerly exercised by the legislative assembly in that behalf.* [Italics supplied.] *. * * [Authorities.]

"The constitution has not provided for municipal suicide. Yet this is what is proposed to be accomplished by the proceedings under consideration.

The charter of St. Johns would be as effectually relegated to desuetude if the election described were to be upheld as if the people of the entire state should by an initiative measure in express terms repeal that charter and that of the city of Portland and consolidate the two cities under a new municipal constitution.''

The McKeon case was decided in March, 1912. In September, 1913, this court decided the case of *State ex inf. v. Gilbert,* 66 Or. 434, 134 P. 1038. The latter litigation involved the consolidation of Seaside and West Seaside, both municipal corporations in Clatsop county. The consolidation of the two cities was brought about pursuant to § 3210, L. O. L. (Laws 1893, page 119), which provided that two or more contiguous municipal corporations might become consolidated in one corporation ''after proceedings had as required in this section''. The act provided for the filing of petitions by at least one-fifth of the qualified voters of each municipality with the respective council of the city, whereupon an election was to be called by each city and the question submitted to the electors thereof for their approval or rejection. The procedure so outlined by the statute was followed, and the electors of both cities concerned voted in favor of the consolidation.

After referring to article XI, § 2, of the constitution, the court therein stated:

''This provision of the fundamental law does not in any way infringe upon the right of the legislature to make general laws for the formation of corporations. The inhibition of that section is directed solely against action by the legislature affecting only a particular municipality, city or town. * * * It is conceded that the legislative directions mentioned have been strictly followed, and hence the

consolidation comes within the constitutional sanction that 'corporations may be formed under general laws.' "

It was pointed out that the plaintiff in the case then at bar relied upon *McKeon v. Portland*, supra, and in that connection the court said:

". . . In that case the city of Portland, by virtue of the particular provisions of its charter, attempted to amalgamate the adjoining city of St. Johns. No official action was taken by the latter municipality. The procedure was inaugurated solely upon the petition of some individual residents of St. Johns, and by virtue of the provisions of the special act incorporating the city of Portland. It was an effort of Portland to absorb St. Johns under the charter of the former in the absence of any motion or consent of the latter. There was no concerted action between the two municipalities as such, as required by section 3210, L. O. L., so that the Portland-St. Johns case is clearly distinguishable from the present one."

The ruling in *McKeon v. Portland*, supra, is further clarified in *Greig v. Owyhee Irrigation District*, 102 Or. 265, 273, 202 P. 222, thus:

". . . Under constitutional provisions such corporations can not in the absence of state consent by legislation so change their characters as to include new territory without the consent of the people of such territory; much less can they, as the town of St. Johns attempted to do in McKeon v. Portland, *supra*, forfeit their charters and commit suicide without the consent of the people of the whole state or in some method provided by general legislation."

*State ex inf. v. Gilbert*, supra, has numerous times been cited with approval by this court as authority upholding the right of the legislature to pass general

laws for the formation of municipal corporations. See, in this connection: *School District No. 35 v. Holden*, 78 Or. 267, 151 P. 702; *Lovejoy v. Portland*, supra; and *Burton v. Gibbons*, supra.

The language of the statute construed by this court in *State ex inf. v. Gilbert*, supra, was in many respects identical with that of the act we are now considering. The only material difference is the provision in the 1941 act relating to the preparation and adoption of a charter by the new municipal corporation and the apportionment of expenses therewith connected to the cities concerned. Under the 1893 act it was unnecessary for a new municipal corporation to adopt a charter, for the reason that the act itself (Laws 1893, pages 119 to 133, inclusive; §§ 3206 to 3244, inclusive, L. O. L.) prescribed the powers of municipalities formed pursuant to its provisions.

■  Chapter 459, Oregon Laws 1941, is a general law, applicable alike to all cities. It authorizes municipalities and adjoining or nonadjoining territory to form a new municipal corporation and prescribes the procedure to be followed. The act does not create a new municipality. It leaves to the voters of the area affected the determination of whether a new municipality shall be created. The act, in our opinion, is not inimical to article IV, § 1-a, or article XI, § 2, of the constitution.

■  The question remains whether chapter 459, supra, is in conflict with article XI, § 2-a, of the organic act. That section provides as follows:

"The legislative assembly, or the people by the initiative, may enact a general law providing a method whereby an incorporated city or town or municipal corporation may surrender its charter and be merged into an adjoining city or town; provided, a majority of the electors of each of the in-

corporated cities or towns, or municipal corporations affected, authorize the surrender or merger, as the case may be.''

In the form of a constitutional amendment it was submitted by the legislature in 1913 to the electors of the state for their approval or rejection and was approved November 3, 1914. The legislative action was taken after the decision of this court in *McKeon v. Portland,* supra, and prior to that in *State ex inf. v. Gilbert,* supra. Section 2-a of article XI does not prohibit the formation of a new corporation by consolidation of existing municipalities, with unincorporated territory added. The only restriction it places on the right of municipal corporations to consolidate is that the vote of ''a majority of the electors of each of the incorporated cities . . . affected'' is necessary to authorize such merger.

■ Chapter 459, *supra,* directs the members of the common councils of the cities sought to be consolidated to meet in joint convention at the usual place of meeting of the council of the city having the largest population, which in this case is Marshfield. The joint meeting is to be held on three separate occasions, first, to determine the sufficiency of the petitions, next, to fix the time of the special election, and finally, to canvass the vote cast at the election. It is contended by the defendants that this would require them to meet and transact business elsewhere than within the corporate limits of the city of North Bend, whereas the charter of that city specifies that meetings of the council shall be held within the city.

It is undoubtedly true that chapter 459, *supra,* imposes upon the members of the city council duties in addition to those prescribed by the charter of North

Bend. These further duties, however, relate to matters not covered by the city charter, and the legislature has deemed that they can best be performed jointly by the common councils of the cities concerned in the consolidation proceedings. Even though the 1941 act be construed as amending the charter, it is not unconstitutional: *Burton v. Gibbons,* supra.

■ The charter commission is granted authority to employ "such legal or other assistance as" it may find advisable in the preparation of the charter, and any expense thereby incurred is to be borne equally by the cities concerned. The defendants argue that this provision of the act under consideration is violative of both § 5 and § 11, article XI, of the constitution. They assert that it confers upon municipalities "unrestricted powers" to levy taxes and incur expenses.

Section 5 of article XI provides that, "Acts of legislative assembly incorporating towns and cities shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit". Chapter 459, *supra,* however, is not an act of the legislature incorporating any city or town. Section 11 of article XI limits the amount of revenue which the state or any county or city may raise by taxation. Chapter 459, *supra,* is not a revenue measure. It does not impose upon municipalities coming within its provisions the duty of levying any tax.

In *State ex rel. v. Stannard,* 84 Or. 450, 468, 165 P. 566, 571, mandamus proceedings were brought against the clerk, sheriff, judge and commissioners of Curry county to compel them to perform their official duties in regard to calling and holding a special election in that county on June 4, 1917, pursuant to chapter 422,

General Laws of Oregon 1917. The defendants sought to justify their refusal to call the election on the ground that the expenses therefrom resulting would exceed the $5,000 debt limitation fixed by §§ 10 and 11 of article XI of the constitution. The court held that any debt contracted by Curry county in holding the election would be an involuntary indebtedness incurred in the performance of a duty and obligation imposed by law, and that the payment of such election expenses would have precedence over any voluntary liability of the county. The following excerpt from the opinion is pertinent here:

> "It is true that the budget shows that the county plans to expend the whole amount raised for general county purposes; and if the county carries out its plans it will be impossible to hold the special election without exceeding the $5,000 indebtedness limitation. In other words, if the county is permitted to do what it has planned to do it will pay out all the tax money for the items mentioned in the budget and there will be no money available to pay the cost of the election. The legislature, however, by the enactment of chapter 422, Laws 1917, has in effect said to Curry county:
>
>> " 'If your plans require all your money, then you must change your plans; and, instead of using all your money as you have planned, you must set aside a sufficient sum to pay for the special election and only the balance remaining is available for your plans' ".

After pointing out that both the voluntary indebtedness and the involuntary are limited by the constitution, the opinion thus proceeds:

> "However, it is not probable that the expenditure of $1,200 for the special election will be followed by the direful consequences suggested by

the answer. The pleadings do not mention and no account has been taken of the revenues coming to the county from sources other than taxes. The fees paid to the various county officers for the county during the year undoubtedly aggregate a considerable sum and probably are more than enough to pay for holding the special election.''

In the case before us no estimate has been made of the cost of preparing the charter or holding the special election. Nor are we advised as to the state of the city's finances. Moreover, as suggested in *State ex rel. v. Stannard,* supra, it is not probable that the bearing by North Bend of its share of the expenses of charter preparation and special election will be followed by ''direful consequences''. In our opinion, chapter 459, *supra,* is not violative of § 5 or § 11 of article XI of the constitution.

██ After the petitions for consolidation of the municipalities have been filed, the law requires that the ''common councils or other governing bodies'' of the cities affected shall meet in joint convention. The question here arises whether the mayor of North Bend is a member of the common council or other governing body of North Bend, within the meaning of the act. He was made a defendant in this proceeding, but takes the position that he is not a proper defendant. The charter of North Bend, which was adopted by initiative measure September 19, 1908, provides that the council of that city shall consist of six councilmen (§ 43). It also states that the mayor shall preside over the council meetings and that he shall not be entitled to vote except in case of a tie (§ 87). The mayor is also given veto power (§ 46).

In 37 Am. Jur., Municipal Corporations, page 671, § 58, cited by the defendants, we find the following:

"When the statutes provide that the mayor shall preside at meetings of the municipal council, he is a constituent part of the council for certain purposes, and he sits and acts therein, but he is not in any proper sense a member of the council, unless the statutes expressly so provide."

Section 95-401, O. C. L. A., which prescribes the procedure for the incorporation of cities and towns, specifies that the "mayor and aldermen shall compose the common council" of any city or town organized under that act. Although the section is not here controlling, inasmuch as the city of North Bend was not organized under the general law for the incorporation of cities and towns, it nevertheless serves as a legislative definition of "common council".

The legislature in the enactment of chapter 459, Oregon Laws 1941, had in mind the governing bodies of the cities, which it mentioned as "common councils or other governing bodies". Some of the duties imposed upon each council by chapter 459, *supra,* are the appointment of members of the charter commission and the calling of a special election. In carrying out those functions the mayor is the presiding officer, and in case of a tie he may cast the deciding vote. It is our opinion that the legislature, in this connection, intended to include the mayor as "a constituent part of the council".

There are numerous other questions raised by the defendants, in their brief and on oral argument. We have given them all careful consideration and have found no merit in them. The demurrer is accordingly overruled.

On the oral argument, counsel for the defendants stated that all the facts were set forth in the alternative writ and that the defendants did not intend to file an answer in the event that the demurrer be overruled. It is therefore ordered that a peremptory writ issue, requiring the defendants in this proceeding to meet in joint convention with the common council of the city of Marshfield at the usual place of meeting of the latter council, on June 2, 1943, at the hour of eight o'clock p. m. or at any earlier time that may be agreed upon by both councils.