Argued July 29, decided September 2, 1913.

# RIGGS *v.* GRANTS PASS.*

(134 Pac. 776.)

**Municipal Corporations—Power of Municipality—Charter Amendment.**

1. A municipality cannot amend its charter so as to confer upon itself power beyond what is properly municipal or governmental; hence, where the charter of a city as granted by the legislature prescribed the power of the common council, an amendment by the vote of its inhabitants enlarging the authority of the common council, authorizing it to incur indebtedness in the sum of $200,000 for general municipal purposes, building bridges, roads or electric or steam roads or tramways, within or without the city, was an attempt to ignore state authority and assume sovereign rights, and was *ultra vires* and void.

> [As to the validity of a statute conferring on a municipality power to amend or adopt a new charter, see note in Ann. Cas. 1913C, 788.]

**Municipal Corporations—Amendment of Charter.**

2. Such amendment was simply an attempt to enlarge the charter powers of the city, as granted by the legislature, and not an attempt to legislate.

**Municipal Corporations—Issuance of Bonds—Vote—Statutory Provisions.**

3. A submission to the people of a municipal charter amendment authorizing the common council to incur indebtedness in the sum of $200,000 for general municipal purposes, building bridges, electric or steam roads or tramways was not the submission of a proposition to issue bonds for a particular purpose, as required by the city charter, requiring that all propositions to issue bonds shall first be submitted to a vote.

**Municipal Corporations—Statutes—Construction—Retroactive Operation.**

4. Laws of 1913, page 541, authorizing incorporated cities to build, own and operate railroads, waterworks and light plants, can have no retrospective effect, and hence could not operate to give validity to an attempted charter amendment prior to the passage of the law.

**Municipal Corporations—Statutes—Construction—Charter Amendment.**

5. Laws of 1913, page 541, authorizing incorporated cities to build, own and operate railroads, waterworks and light plants, does not operate as an amendment of city charters; but the charters may be amended to take advantage of the powers granted.

---

*On the question of the power of the legislature to delegate to a municipality authority to form or amend its charter, see note in 43 L. R. A. (N. S.) 339.        REPORTER.

From Josephine: FRANK M. CALKINS, Judge.

*En Banc.*   Statement by MR. JUSTICE EAKIN.

This is a suit brought against the city of Grants Pass and Robert G. Smith, as mayor thereof, Robert H. Creager, as auditor and police judge thereof, and William Atchinson, A. S. Barnes, G. M. Caldwell, E. H. Culbertson, H. J. Clark, W. E. Everton, R. S. Morgan and A. A. Porter, each as councilman of said city of Grants Pass, to enjoin them from issuing and selling bonds of the city, and from expending money or incurring debts for the purchase of rights of way, or building, owning or operating a railroad, either within or without the city, which they are threatening to do by virtue of an attempted amendment to the city charter known as Section 93a, adopted December 18, 1912, and an ordinance designated as No. 688, Exhibit D, approved June 12, 1913.   Said Section 93a provides: "The common council shall have authority and power and are hereby granted authority and power to incur indebtedness and pledge the credit of the city for the sum of two hundred thousand dollars in addition to other indebtedness of the city now outstanding for general municipal purposes, building bridges, roads or electric or steam roads or tramways within or without the city of Grants Pass, in Josephine County, Oregon; to buy and hold real estate for municipal purposes. The said bonds so issued shall not bear a greater rate of interest than five per centum per annum and shall be payable or redeemable in such time as may be fixed by the common council and shall not be sold for less than the par value thereof."   Ordinance 688 provides for the issue of bonds of the city in the sum of $200,000 for the purpose of building a steam railway for the use of the citizens of Grants Pass and for profit from the city to the town of Wilderville, a distance of about 10 miles.

Defendants answer the complaint by admitting many of the facts alleged, but deny the legal effect thereof. The case was tried upon the evidence, and findings and decree were rendered that there were no equities in favor of plaintiff and dismissing the suit. The plaintiff appeals.        REVERSED.

For appellant there was a brief, with oral arguments by *Mr. Asa C. Hough* and *Mr. J. N. Johnston.*

For respondents there was a brief, with oral arguments by *Mr. G. W. Colvig* and *Mr. Robert G. Smith.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. Several questions of law are presented on the appeal; but only two of the questions involved require consideration and are decisive of the case, namely: (1) The power of the city by the vote of its inhabitants to amend its charter, enlarging the authority of its council to bond the city to the amount of $200,000 for the purpose of building a railroad from the city to a neighboring city for profit; (2) whether the act of the legislature of February 27th (Laws 1913, p. 541), authorizing incorporated cities to build, own and operate railroads, waterworks and light plants operated to give validity to said charter amendment of December 18, 1912.

Section 93 of the charter of the city, which was granted by the legislature on February 16, 1901, prescribes the power and authority of the common council, and contains 56 subdivisions which relate to local, special and municipal affairs of the city, and by the said amendment of the charter the city attempted to assume a prerogative to legislate as to matters extra-municipal, no such right or power having been granted by the state, either by general or special law.  A

municipality cannot amend its charter to confer upon itself power or authority beyond what is properly municipal or governmental: *Schubel* v. *Olcott,* 60 Or. 503 (120 Pac. 375); *State ex rel.* v. *Port of Tillamook,* 62 Or. 332 (124 Pac. 637). The power of the legislature is unlimited when not restricted by Constitution; but such powers do not extend to a city except as granted by the state. Article XI, Section 2, or Article IV, Section 1a, of the Constitution do not confer such powers. The rights there given are municipal. The effect of adding Section 93a to the charter, *supra,* was an attempt to ignore the state authority and assume sovereign rights, and was *ultra vires.*

2. Furthermore, such amendment was only an attempt to enlarge the charter powers of the city in addition to those conferred by Section 93, and not an attempt to legislate. It was not an authorization given by the people to issue bonds for the building of a specific railroad, which can only be authorized in the manner provided by Subdivisions 34 and 35 of Section 93.

3. Even under the attempted amendment the city should have observed the requirements of the charter in proceeding to take action within any of the powers granted. The power given by the amendment is to incur indebtedness to the amount of $200,000 over and above other liabilities "for general municipal purposes, building bridges, roads, electric or steam railroads, to buy and hold real estate for general purposes"; but the submission to the voters of the charter amendment was not a submission of a proposition to issue bonds for a particular purpose under Subdivision 35, Section 93, of the charter, but only an enlargement of the charter powers.

By Subdivisions 34 and 35 of Section 93, "no contract shall be entered into or debt contracted for any public

work * * without first submitting the same to the qualified voters," etc., and "any and all propositions to issue bonds for any purpose shall first be submitted to a vote," etc. However, we cannot recognize the attempted charter amendment, as it was beyond the power of the city to assume to itself sovereign power that rests exclusively in the state.

4. Defendants insist that the legislative act of February 27, 1913 (page 541 of the Laws of 1913) gives validity to the charter amendment of December 18, 1912; but it can have no retrospective effect.

5. It does not operate as an amendment of city charters; but charters may be amended to take advantage of powers granted. In the case of *Straw* v. *Harris,* 54 Or. 424 (103 Pac. 777), it is said: "The language used in the amendments considered (to the Constitution) would appear to give to incorporated cities the exclusive control and management of their own affairs, even to the extent, if desired, of legislating within their borders without limit, to the exclusion of the state. But, as stated, these provisions must be construed in connection with others of our fundamental laws, which can but lead to the conclusion above announced, and, whatever may be the literal import of the amendments, it cannot be held that the state has surrendered its sovereignty to the municipalities to the extent that it must be deemed to have perpetually lost control over them. * * Power to enact local legislation may be delegated; but this of necessity, whether stated or not, is always limited to matters consonant with, and germane to, the general purpose and object of the municipalities to which such prerogatives may be granted." This is reiterated in *City of McMinnville* v. *Howenstine,* 56 Or. 451 (109 Pac. 81, Ann. Cas. 1912C, 193), and that case did not depend alone upon the amendment of the charter, but the amendment was authorized

by statute (Section 5108, B. & C. Comp.), as shown by the concurring opinion of Mr. Justice SLATER.

The attempted amendment to the charter was unauthorized when adopted, and the legislative act could give it no vitality. Neither it nor the legislative act authorized a particular issue of bonds to build a particular railroad or purchase any particular real estate; but before the city can have the benefit of the statute it must act affirmatively by making its charter conform to it, and then proceeding in the manner provided in its charter and ordinances. Article XI, Section 2 of the Constitution confers power and authority upon cities to form their own charters and make their own laws within their municipal needs, that is, in local and special municipal legislation. Authority beyond that must come from the sovereign, namely, the legislature, by general laws or by the people by general or special laws. The Constitution of Missouri authorizes cities to form their own charters. In *State ex rel.* v. *Telephone Co.*, 189 Mo. 84 (88 S. W. 41), it is said: "The constitutional provision which requires the charter to be framed by a city of a certain size, to be always subject to the Constitution and laws of the state, means that in all matters not appertaining to city government the charter is subordinate to the will of the general assembly": See, to the same effect, *Tacoma Gas & Elec. Co.* v. *City of Tacoma*, 14 Wash. 288 (44 Pac. 655); Dillon, Mun. Corp., § 63.

Therefore the city is not authorized to issue or sell the bonds provided for by the charter amendment and ordinance 688, and the decree of the Circuit Court is reversed, and the injunction prayed for allowed.

REVERSED: INJUNCTION ALLOWED.